# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 538
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO  45202-3988

LEONARD GREEN
CLERK

TELEPHONE
(513) 564-7000

March 4, 2005

**RECEIVED**

MAR  7 2005

JAMES BONINI, Clerk
CINCINNATI, OHIO

Robert B. Newman
Stephen R. Felson
David Todd Stevenson
Richard Ganulin

Re:    Case No. 03-3916
       *Gerald Cash, et al. v. Hamilton County Department of Adult Probation, et al.*
       District Court No.  01-00753

Dear Counsel:

Enclosed is a copy of a corrected page from the decision originally sent to you November 12, 2004.  Please make corrections in your publication version as indicated on page 2, line 22.

Thank you for your cooperation in this matter.

Yours very truly,

Leonard Green, Clerk

By *Linda K. Martin*
(Mrs.) Linda K. Martin
Deputy Clerk

LKM/swh
Enclosure

cc:    Honorable Sandra Beckwith
       Clerk, United States District Court
       Lexis Nexis
       West Publishing Company
       Commerce Clearing House, Inc.
       Bureau of National Affairs
       M. Lee Publishers LLC
       Tax Analysts
       Ohio Lawyers Weekly

# I. BACKGROUND

## A.    Factual background

The City of Cincinnati pays Hamilton County to provide city cleanup services. Crews of individuals sentenced to community service and assigned to the Hamilton County Department of Adult Probation's Community Service Program, led by a field supervisor, provide litter collections and ground maintenance of city-owned lots. At issue in this case are the cleanup activities of these crews in areas where homeless individuals reside.

In October of 2001, Gerald Cash, a homeless man, was living under the Fifth Street Viaduct in Cincinnati with his wife, Clara Cash, and his friend, Rocky Wayne Adkisson. One day in mid-October of 2001, the Cashes returned to their living space and found a group of people from the Community Service Program taking away their property. When Gerald Cash asked for his property to be returned, the work crew supervisor allegedly told him: "I'm not allowed to; we have been given orders to clear out under all the bridges."

The Cashes and Adkisson made efforts to locate their property, but were unsuccessful. Clara Cash stated in an affidavit that she called the City of Cincinnati's Sanitation Division and, although she was told that her property would be held for 30 days, she was not told where it was located. Molly Lyons, an organizer with the Greater Cincinnati Coalition for the Homeless, also tried to locate the property that was taken from under the Fifth Street Viaduct. Lyons said that she called the Sheriff's Office and was told that "the stuff from the homeless sites is thrown away."

## B.    Procedural background

Five homeless individuals—Gerald Cash, Clara Cash, Rocky Wayne Adkisson, Phillip Garcia, and Gregory B. Wahoff—filed suit against the Hamilton County Department of Adult Probation, the Chief Probation Officer for the Department, and the City of Cincinnati (hereafter referred to collectively as the City and County) in October of 2001. Three of the five plaintiffs have since died. The remaining two (hereinafter the plaintiffs) continue with this suit.

The plaintiffs sought actual damages and injunctive relief, claiming that the City and County violated their Fifth and Fourteenth Amendment rights by destroying their property without affording them the due process of law. They also sought a preliminary injunction requiring the City and County to cease and desist from their alleged practice of seizing and confiscating the property of homeless citizens without notice and a hearing. Subsequently, however, the plaintiffs explicitly stated that they no longer contest the City's authority to remove personal property from municipally-owned areas. They acknowledge in their brief that "[i]t is the *destruction* of property without notice and a hearing which is at the heart of Plaintiff's case." (Emphasis in original.)

In May of 2002, the City and County moved for summary judgment. The district court, a little over a year later, granted these motions and denied the plaintiffs' motion for a preliminary injunction. This appeal followed.

# II. ANALYSIS

## A.    Standard of review

We review a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in