IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gerald Cash, et al.,            )
                                )
          Plaintiffs,           ) Case No. 1:01-CV-753
                                )
     vs.                        )
                                )
Hamilton County Department      )
of Adult Probation, et al.,     )
                                )
          Defendants.           )

O R D E R

This matter is before the Court on Plaintiff Gerald Cash, et al.'s motion for partial summary judgment against Defendant City of Cincinnati (Doc. No. 46) and Defendant City of Cincinnati's motion to dismiss for lack of jurisdiction (Doc. No. 47). In addition to these two motions, the Court addresses two other issues in order to comply with the Court of Appeals' mandate in Cash v. Hamilton County Dept. of Adult Probation, 388 F.3d 539 (6th Cir. 2004). For the reasons that follow, Plaintiffs' motion for partial summary judgment is not well-taken and is **DENIED**; the City of Cincinnati's motion to dismiss for lack of jurisdiction is not well-taken and is **DENIED**. The case administrator is directed to set this case for a status/scheduling conference at the earliest convenient time for the Court and the parties.

I. Procedural History

Plaintiffs in this case are homeless persons who lived and kept their possessions underneath bridges and overpasses in the City of Cincinnati. In the fall of 2001, the Cincinnati Police Department, with the assistance of probationers supplied by the Hamilton County Department of Adult Probation, conducted sweeps of these areas to eject homeless persons from living on public property. Plaintiffs contend that during one of these "raids" the Defendants confiscated their belongings and disposed of them without prior notice and an opportunity to be heard.

In October 2001, Plaintiffs filed a civil rights action pursuant to 42 U.S.C. § 1983 against the Hamilton County Department of Adult Probation, the City of Cincinnati, Jay Heitz, Chief Probation Officer for the Department of Adult Probation, and Hamilton County Sheriff Simon Leis, Jr. Plaintiffs alleged that Defendants' alleged confiscation and destruction of their property without prior notice and an opportunity to be heard violated their right to due process under the Fifth and Fourteenth Amendments.

Following the close of discovery, the Defendants each filed motions for summary judgment on Plaintiffs' claims. In its motion, the City of Cincinnati argued that Plaintiffs failed to establish that the alleged deprivation of their property was pursuant to a custom or policy of the City. In support of its motion, the City submitted evidence that any personal property

found at the clean-up sites was logged into the police property room.  The City also submitted copies of its procedures for disposing of unclaimed property which, in part, called for notice by publication in local newspapers of auctions or other disposition of such property.  In support of its motion for summary judgment, the Adult Probation Department argued in part that it was entitled to Eleventh Amendment sovereign immunity because it is a department of the state common pleas and municipal courts, and, therefore, a part of the government of the State of Ohio.

      In resolving the motions, the Court found that the record established without contradiction that while cleaning these campsites, the probationers were instructed to separate personal belongings from trash.  Because the instructions were to preserve things of value, the Court concluded that any destruction of Plaintiffs' property was a random, unauthorized, and unforeseeable act of the probationers.  The Court, therefore, concluded that the Supreme Court's decision in Parratt v. Taylor, 451 U.S. 527 (1981), controlled and held that there was no due process violation because a state post-deprivation replevin action was adequate to redress Plaintiffs' injuries.  In other words, the Court essentially adopted the City's position that the destruction of Plaintiffs' property did not occur pursuant to a custom or policy of the City.  In addition, the Court noted that

another occasion when Plaintiffs' property might have been destroyed was after it had been logged into the police property room.  The Court, however, found no due process violation in this instance either.  The Court held that because Plaintiffs were homeless, notice by publication of the impending disposition of their property was sufficient to satisfy due process.  Because the Court found no constitutional violation on the record before it, it did not address the Adult Probation Department's contention that it was entitled to Eleventh Amendment sovereign immunity.

      The Court of Appeals, however, had a different assessment of the record.  The Court found that there were genuine issues of fact whether the destruction of Plaintiffs' property at the clean-up sites was pursuant to a custom or policy of the City.  Cash, 388 F.3d at 543.  Among other things, the Court observed that there was evidence that Cincinnati police officers instructed the probationers to bag everything and put it in sanitation trucks to be hauled off to the dump.  Id. at 543-44.  The Court also held that there was a genuine issue of material fact whether Plaintiffs received adequate notice from the City.  While the City argued that notice by publication was sufficient, Plaintiffs contended that such notice is per se insufficient given the financial and educational restraints of the homeless community.  The Court stated that the sufficiency of

notice to the Plaintiffs "is an issue for the district court to resolve on remand." Id.  The Court did not address the City's argument that Plaintiffs' Fifth Amendment takings claim was not ripe because Plaintiffs had abandoned it.  Id. at 544-45.

     Finally, the Court rejected the Adult Probation Department's "bald assertion" that it is an arm of the common pleas and municipal courts and therefore entitled to sovereign immunity as an department of the state.  The Court noted that while this is one factor for consideration, it said the most important factor in the immunity analysis is whether the state would pay if the Defendant lost the lawsuit.  Id. at 545.  The Court of Appeals, however, did not resolve the immunity issue because this Court did not provide any findings of fact or analysis of the issue.  The Court stated that final resolution of the issue would "turn on factual findings regarding whether the Department of Adult Probation is part of the Ohio court system and whether the State or the County would pay damages for a constitutional violation perpetrated by the Department."  Id.  The Court, therefore, remanded "this issue to the district court for further development."  Id.

     On remand from the Court of Appeals, Plaintiffs now move for partial summary judgment on the City of Cincinnati's liability for their alleged constitutional injuries.  In their motion, Plaintiffs argue that the evidence is overwhelming that

their personal belongings were destroyed pursuant to an official custom or policy of the City. Plaintiffs contend that the City's policy for dealing with found property in other areas of the City, such as Fountain Square, was different from the policy applicable to cleaning up the homeless sites. Plaintiffs further contend that in any event, that the City failed to provide adequate notice as a matter of law regarding the destruction of their property.

Additionally, the City of Cincinnati moves to dismiss Plaintiffs' claims for lack of subject matter jurisdiction. The City argues that Plaintiffs's claims are not ripe because they failed to exhaust available state remedies to obtain compensation for their lost property.

Because the City's motion to dismiss raises the question of subject matter jurisdiction, the Court address the City's motion first. <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83 (1998)(holding that federal courts must ensure subject matter jurisdiction is present before resolving merits of a case or controversy).

II. <u>The City of Cincinnati's Motion to Dismiss</u>

In <u>National Rifle Ass'n of Am. v. MacGaw</u>, 132 F.3d 272 (6th Cir. 1997), the Court succinctly explained the ripeness doctrine:

> Supreme Court has stated that the basic rationale of
> the ripeness doctrine is to prevent the courts, through

>     premature adjudication, from entangling themselves in
>     abstract disagreements. Ripeness becomes an issue when
>     a case is anchored in future events that may not occur
>     as anticipated, or at all.  Ripeness is, thus, a
>     question of timing.

Id. at 284.  The Court does not have subject matter jurisdiction over controversies that are not ripe.  Bigelow v. Michigan Dept. of Nat. Res., 970 F.2d 154, 156 (6th Cir. 1992).  As noted, the City of Cincinnati argues that Plaintiffs' due process claims are not ripe because they failed to exhaust available state remedies before filing suit in federal court.  Specifically, the City points to Plaintiffs' failure to avail themselves of the available state replevin action to obtain redress for their losses.   The Court disagrees with the City's ripeness analysis.

While a plaintiff asserting a procedural due process violation under the Fourteenth Amendment must plead and prove the inadequacy of state remedies, he is not required to exhaust the available state remedies.  Jefferson v. Jefferson County Pub. Sch. Sys., 360 F.3d 583, 587-88 (6th Cir. 2004); Nunn v. Lynch, No. 03-6180, 2004 WL 2030289, at *5 (6th Cir. Sept. 8, 2004). The City's primary authority in support of is argument, Arnett v. Myers, 281 F.3d 552 (6th Cir. 2002),[1] is primarily a Fifth Amendment Takings Clause case.  Takings Clause cases do present ripeness issues because the state action is not complete until

---

[1] The remaining cases cited by the City are not from the Sixth Circuit, and, therefore, are not binding.

the state has failed to provide just compensation for the confiscated property. Thus, in order to have a ripe Takings Clause claim, the plaintiff must first utilize the state remedies to obtain just compensation for his loss. See id. at 562. Procedural due process claims only have an exhaustion requirement if they are ancillary to the takings claim. Id. In this case, since Plaintiffs have abandoned their takings claim, all that remains is a plain vanilla procedural due process claim. Therefore, Plaintiffs do not have to exhaust any state remedies in order for their claim to be ripe.

Accordingly, the Court concludes that Plaintiffs' Fourteenth Amendment due process claim is ripe. Therefore, the City of Cincinnati's motion to dismiss is not well-taken and is **DENIED**.

### III. Plaintiffs' Motion for Summary Judgment

As noted, Plaintiffs' move for partial summary judgment on the issue of the City of Cincinnati's liability for alleged constitutional deprivations. Plaintiffs argue that the evidence is overwhelming that they lost their possessions pursuant to a policy or custom of the City. They also contend that any notice provided by the City was inadequate as a matter of law.

Plaintiffs contend that the evidence is overwhelming that the City's policy is to discard the property of homeless persons without notice and a hearing. Plaintiffs have not

submitted any new evidence in support of this argument. The record, therefore, is in the same state now as it was when it reached the Court of Appeals. This Court prefers to take the appellate panel at its word when it said there are genuine issues of fact whether Plaintiffs' property was disposed of pursuant to a custom or policy of the City. Cash, 388 F.3d at 544 (noting that the City and County both presented evidence in opposition to Plaintiffs on the issue of custom and policy).

      The Court, moreover, observes that Officer Prem testified that when he supervised the clean-ups, personal property was tagged and sent to the police property room. Prem Dep. at 12-13, 46. Plaintiffs argue that the Court should disregard this testimony as only a "scintilla of evidence" because Officer Prem failed to provide any specific examples when this occurred, compared to the allegedly more concrete testimony in opposition provided by other witnesses. The Court disagrees that Officer Prem's testimony is just a scintilla of evidence. It is, in fact, a explanation of the procedures he implemented when he supervised the clean-ups and in reality is not much less specific than other witnesses' testimony that the probationers were instructed to bag everything to be hauled to the dump. Another possible inference from the record is that whatever happened to personal property encountered on-site was left to the discretion of the individual supervising police officer.

Because there are questions of fact regarding whether Plaintiffs' possessions were discarded pursuant to a custom or policy of the City, or discarded at all, the question of notice is a somewhat moot point. This is so because, as the Court stated in its first decision, if the destruction of Plaintiffs property was the random, unauthorized act of the probationers actually doing the cleaning, there is no due process violation unless the state's post-deprivation remedies are inadequate. In fact, the Court's analysis of the adequacy of notice on summary judgment the first time only assumed that Plaintiffs' property had been taken and destroyed by the City. See Doc. No. 35, at 8-9. The Court noted then, and we state again here, there is a substantial overlap between the items Plaintiffs claim they lost and the log of items checked into the police property room at around the time the clean-ups in question happened.[2] At this late date, however, it is fair to assume that Plaintiffs' property has been discarded even had it been checked into the property room.

Plaintiffs argue that no notice was given to them about the destruction of their property because their inquiries, which involved fruitless calls to the sanitation department, the

---

[2] Plaintiffs' counsel submitted his own affidavit which stated in conclusory fashion that none of items logged in by the police belonged to Plaintiffs. There is no evidence, however, that the Plaintiffs themselves verified whether their belongings were in the police property room.

sheriff's department, and the police department, to discover the whereabouts of their things probably would have revealed the fact that notice had been given at some point. In other words, Plaintiffs argue that since the persons they spoke with did not know what happened to their property, in can be inferred that their property was destroyed without notice. This argument has little probative force, however, because it assumes that the persons with whom Plaintiffs spoke are familiar with the day-to-day operations of the property room. There is no foundation for such an assumption on this record.

      Plaintiffs further point out that Defendants never produced evidence that notice was actually given. This argument, of course, overlooks the fact that Plaintiffs bear the burden of proving the insufficiency of the notice, not vice versa. Hahn v. Star Bank, 190 F.3d 708, 715 (6th Cir. 1999)(plaintiff must prove as element of due process that the state did not provide adequate procedural rights prior to deprivation of protected interest). In any event, as the Court recounted in its previous order, Doc. No. 35, at 10-12, state law requires the police department to give notice by publication before disposing of property in its possession. Therefore, it can be inferred, at least for purposes of Plaintiffs' motion for summary judgment, that the police department did give notice by publication. See Fed. R. Evid. 406 ("Evidence of the habit of a person or of the routine practice of

an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.").

In summary, in the light the Court of Appeals' opinion in this case, there are an abundance of factual issues to be resolved in this case. A rough outline of the issues to be resolved looks like this:

1. Was Plaintiffs' property disposed of on-site or was it logged into the police property room?

   a. If the property was disposed of on-site, was it pursuant to a custom or policy of the Defendants or was it a random, unauthorized act of the probationers?

      i. If the destruction of Plaintiffs' property was the random or unauthorized act of the probationers, then <u>Parratt</u> controls and the issue becomes whether state post-deprivation remedies are adequate to redress the loss.

      ii. If the destruction of Plaintiffs' property was pursuant to a custom or policy of the Defendants, was pre-deprivation notice feasible? If not, or if the necessity for quick action existed, the issue again becomes whether state post-deprivation remedies are adequate to redress the loss. <u>Watts v. Burkhart</u>, 854 F.2d 839, 842 (6th Cir. 1988). If pre-deprivation notice was feasible, or quick action was not required, then Plaintiffs could establish a loss of property pursuant to an established state procedure. <u>Mertik v. Blalock</u>, 983 F.2d 1353, 1365 (6th Cir. 1993).

2. If Plaintiffs' property was logged into the police property, room, did the police give any notice before disposing of it? If not, Plaintiffs could establish a due process violation.

   a. If the police did give notice before disposing of Plaintiffs' property, was such notice reasonably

calculated under the circumstances to apprise Plaintiffs of the pending action? <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).

These questions cannot be resolved as a matter of law on the present record.  Accordingly, Plaintiffs' motion for summary judgment is not well-taken and is **DENIED**.

### III. <u>Remand Issues</u>

The mandate of the appellate panel instructs this Court to resolve the issue of the adequacy of notice by publication given the educational and financial constraints of the homeless community and to make factual findings regarding whether the state or the county would satisfy any judgment against the Department of Adult Probation.  The record presently before the Court is devoid of any evidence regarding the financial or educational limitations of the homeless community.  Similarly, there is no evidence regarding the source of funding for the Department of Adult Probation.  Consequently, the parties will have to supplement the record so that the Court can resolve these issues in compliance with the mandate.  This very likely means that the parties will need to conduct further discovery on these two issues.

Accordingly, the case administrator is directed to set this case for a status/scheduling conference so that the Court and the parties can develop a calendar for resolution of these issues.

<u>Conclusion</u>

For the reasons stated, Plaintiffs' motion for summary judgment is not well-taken and is **DENIED**.  The City of Cincinnati's motion to dismiss is not well-taken and is **DENIED**. A new trial scheduling order will be established for final resolution of this case.


**IT IS SO ORDERED**


Date February 8, 2006                    s/Sandra S. Beckwith
                                   Sandra S. Beckwith, Chief Judge
                                    United States District Court