# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO - WESTERN DIVISION

| | | |
|---|---|---|
| GERALD CASH, *et al.* | : | Case No. C-1-01-753 |
| | : | |
| Plaintiffs, | : | (Honorable Sandra S. Beckwith) |
| | : | |
| v. | : | MOTION FOR SUMMARY JUDGMENT |
| | : | BY HAMILTON COUNTY |
| HAMILTON COUNTY DEPT. OF ADULT | : | DEPARTMENT OF ADULT PROBATION |
| PROBATION, *et al*. | : | AND MICHAEL WALTON, CHIEF |
| | : | PROBATION OFFICER |
| Defendants | : | |

For the reasons stated with more particularity in the attached Memorandum of Law, Defendants Michael L. Walton and the Hamilton County Department of Adult Probation move for Summary Judgment under FRCP 56. Additionally, said defendants suggest that this action is barred by the Eleventh Amendment to the United States Constitution.

Respectfully submitted,

JOSEPH T. DETERS
PROSECUTING ATTORNEY
HAMILTON COUNTY, OHIO

by:  */s/ David T. Stevenson*
David T. Stevenson, Ohio Reg. 0030014
Assistant Prosecuting Attorney
Suite 4000 Wm. Howard Taft Law Center
230 East Ninth Street
Cincinnati, Ohio 45202
*Trial Counsel for Hamilton County*
*Department of Adult Probation and Michael*
*Walton, Chief Probation Officer*

**MEMORANDUM OF LAW**

**I.   BACKGROUND**

    **a.   Incorporation by Reference**

Defendants Michael L. Walton, and the Hamilton County Department of Adult Probation incorporate by reference as if fully rewritten here their *Answer to the Amended Complaint (Doc. 16)*, their first *Motion for Summary Judgment (Doc. 25)*, their *Reply to Plaintiffs' Response to their Motion (Doc. 28),* as well as all attachments to any of the foregoing documents.

    **b.   Prior Proceedings**

The Sixth Circuit Court of Appeals remanded this matter, in part, for factual findings and analysis of the issue of Eleventh Amendment immunity that was raised by Walton and the Probation Department in their first Motion for Summary Judgment. *( Slip op. at 16-17).* Walton and the Probation Department intend to offer further evidence and argument on this issue, as well as matters that have been adduced in further discovery following remand.

    **c.   Facts**

The statement of facts from this Court's prior decision and additions thereto subsequently included in the opinion of the Sixth Circuit are incorporated by reference.

Following remand, two of the three remaining plaintiffs, Phillip R. Garcia and Gregory Wahoff, [1] were deposed.

On September 28, 2001, Phillip R. Garcia maintained an illegal camp under the Sixth Street bridge at Gest Street in the City of Cincinnati. *(Garcia Depo. at 7).* He acknowledges

---

[1] Counsel for Plaintiffs have informed Defendants that Rocky Adkisson is not available for a deposition, presumably his whereabouts is unknown. A suggestion of death was filed as to Gerald and Clara Cash in November of 2004 and no one has been subsequently substituted as a party. Defendants have filed motions to dismiss all of the foregoing defendants.

that he was trespassing at the time. *Id.*  Garcia departed his camp that day at 10:30 AM and returned at 2:30 PM. *Id.*  Upon his return, he met a Cincinnati Police Officer who informed him that his dog had been taken to the SPCA. *Id. at 7-8.*  The same officer told Garcia that he should move his belongings. *Id.*  Garcia did not move his belongings because "there wasn't a note." *Id.*  Garcia left to claim his dog and when he returned, the area had been cleaned. *Id. at 9.*  Garcia does not know who cleaned the area and took his property. *Id.*  He did not complain to city officials that his property was taken, *id.,* and he never went to the Cincinnati Police Property Room in an attempt to locate his property. *Id. at 17.*

Gregory Wahoff [2] alleges in the Amended Complaint that his property was taken from the area of the "Fifth Street viaduct west of Central Avenue in Cincinnati, Ohio." *(Amended Complaint, doc. 6 at ¶ 6).*  He alleges that this event occurred on October 15, 2001. *Id. at ¶ 9.*  In his deposition, Wahoff points to two other locations for this event -- under the Sixth Street Bridge [3] *(Wahoff depo. at 20),* and the Eggleston Avenue Bridge -- both in the City of Cincinnati. *Id. at 12.*  He claims to have observed individuals in "orange jump suits" placing items in a City garbage truck. *Id. at 13, 40.*  He did not approach the persons cleaning the area to claim his property, in his words "I got the hell out of there ... Because I didn't want to go to jail." *Id. at 21.*  Wahoff never got closer to the cleanup area than 300 yards while the trucks and workers were there. *Id. at 29.*  He surmises from the orange jump suits that the workers were from Queensgate Center. *Id. at 30.*  He did not ask and was not told that the workers were from Queensgate. *Id. at 29-30.*  Further, Wahoff acknowledges that he was trespassing in the

---

[2] Wahoff did not respond to the initial motions for summary judgment filed by the defendants.

[3] Wahoff refers to the Sixth Street Bridge alternatively as the Gest Street Bridge.

locations in which he made his camps. *See, id. at 18.* He claims to have seen the SPCA take Garcia's dog on September 28, 2001, but does not know who was loading items onto the truck. *Id. at 14.* Wahoff made no attempt to retrieve his property from the City property room. *Id. at 32.*

Michael L. Walton is the Court Administrator for the Hamilton County Common Pleas and Municipal Courts and was appointed to that position in February of 1995. Walton also has served as the Chief Probation Officer for both courts since August 6, 2001. *(Walton Affidavit, ¶ 1).* Walton serves in these positions at the pleasure of the courts. He is responsible solely to the courts and can be removed from either position by either or both of the courts at any time. *Id. at ¶ 2.* Walton has no role in setting policies and procedures for Hamilton County. *Id. at ¶ 3.*

The Hamilton County Probation Department is organized into two separate divisions. The Common Pleas Division, established in 1928, serves the Court of Common Pleas, and the Municipal Division, established in 1968, serves the Municipal Court. Funding for the department is provided primarily by Hamilton County in the same manner as funding is provided for the Courts. *Id. at ¶ 4.*

The Courts -- not the county -- are the appointing authority for the probation officers that serve their respective courts. The probation officers of the Common Pleas Division are classified civil servants. The probation officers in the Municipal Division, however, serve at the pleasure of the Municipal Court. All promotions and discipline of probation officers within both divisions is done by the Courts that they serve. *Id. at ¶ 3.* The policies and procedures of the Probation Department are established by the Courts without input from the Board of County Commissioners. The Chief Probation Officer and all of the subordinate officers answer solely to the Courts. *Id.*

-4-

At the time of the events that are relevant to Plaintiffs' claims in this matter, all community was performed under the direction of the Municipal Division. *Id. at ¶ 6.* Communities must agree to accept community service workers before a court may order the work to be performed. The City of Cincinnati made such an agreement and such services were provided to the City during the time frame relevant to Plaintiffs' Complaint. *Id. at ¶ 7.* The City provided funding for these services to defray the cost of the work crew supervisors and other expenses through a contract with the Board of County Commissioners of Hamilton County, Ohio. *Id. at Exhibit 3, Scope of Services.*

In November 2001, Walton issued a directive that clean-ups in underpass areas were to cease until further notice. *Id. at Exhibit 4.* The substance of the directive was relayed to the crew supervisors and they were told "not to touch" homeless sites. *(Shannon Depo. at 11-13).* Crew chiefs were also advised to contact the local police agency if they found money, guns, or other items of note, and to call and request instruction if they were not sure what to do. *Id. at 26-29.*

Probationers performing community service are not required to wear any particular type of clothing and can wear anything they like as "long as it was appropriate." *(Ellis Depo. at 7).* They did wear red or blue safety vests, *id.*, but did not wear orange jump suits. *(Smith Depo. II. at 38).*

## II.    ARGUMENT

The Sixth Circuit remanded this matter for factual findings and analysis with respect to the assertion that the Probation Department is entitled to Eleventh Amendment immunity. *(Slip op. at 17).* For the reasons that follow, the Probation Department is clearly part of the state's court system and not a county entity.

-6-

Case 1:01-cv-00753-SSB-JS    Document 73    Filed 07/21/2006    Page 6 of 17

### a. Ohio's Court System

Ohio's court system is of constitutional origin and is described in Article IV of the Ohio Constitution. Section 1 of Article IV states:

> The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law.

The supreme court of Ohio has general superintendence over all courts in the state. *Ohio Const. art. IV § 5.*

The Constitution provides that there shall be a court of common pleas and such divisions as may be established by law serving each county in the state. *Ohio Const. art. IV § 4.* Judges of the courts of common pleas may temporarily hold court in any county. *Id.* Counties shall have one or more resident judges or may combine into districts having one or more common pleas judges serving the common pleas courts of all counties within the district. *Id.* Judicial terms for the court of common pleas are six years. *Ohio Const. art. IV § 6.*

Ohio Common Pleas Courts and their divisions possess the inherent authority to order funding that is reasonable and necessary to the court's administration and business. *State ex rel. Wilke v. Hamilton County Board of County Commissioners,* 90 Ohio St. 3d 55, 60, 734 N.E. 2d 811, 818 (2000). The ability to compel such funding is derived from the Ohio Constitution. Legislative attempts to weaken the authority to compel the funding necessary to the operation of a juvenile court and its functions by placing the burden of demonstrating the reasonableness of the funding request upon the court have been determined to be unconstitutional as impermissible legislative encroachments into the inherent power of the judiciary. *State ex rel. Johnston v. Taulbee,* 66 Ohio St. 2d 417, 423 N.E.2d 80 (1981) (paragraph 3 of the syllabus) (involving a juvenile court). The administration of justice by the judicial branch of government cannot be

impeded by the other branches of government in the exercise of their respective powers. *Id*. (paragraph 1 of the syllabus). Courts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government. *Id.* (Paragraph two of the syllabus). "It is a well-established principle that the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers. The proper administration of justice requires that the judiciary be free from interference in its operations by such other branches. Indeed, it may well be said that it is the duty of such other branches of government to facilitate the administration of justice by the judiciary." *State ex rel. Foster v. Board of County Comm'rs,* 16 Ohio St. 2d 89, 92 (1968).

Municipal courts are established by the state acting through the General Assembly. *Revised Code Chapter 1901.* The General Assembly establishes the jurisdiction of municipal courts. The municipal court in Hamilton County has jurisdiction throughout the county, *O.R.C. § 1901.02,* and concurrent jurisdiction with courts in Kentucky over the Ohio River. *O.R.C. § 1901.027.* The Revised Code establishes the qualifications, the terms, and the number of judges within the Hamilton County Municipal Court. *O.R.C. §§ 1901.06, 1901.07, 1901.08.* In appropriating funds for a municipal court, a legislative authority is bound by the same considerations that exist for constitutional courts. *State ex rel. Cleveland Municipal Court v. Cleveland City Council,* 34 Ohio St.3d 120, 127 (1973).

No person shall be elected or appointed to any judicial office who has attained the age of seventy years. *Ohio Const. art. IV § 6(C).* Judges may be removed only by the General Assembly. *Ohio Const. art. IV § 17.*

The authority to establish probation departments is also governed by state law. The counties may not create a county probation department as that power lies specifically and exclusively with the courts. *O.R.C. 2301.27* provides that "the court of common pleas may establish a county department of probation." The department consists of a chief probation officer and such other employees as the court decides. *Id.* The court appoints the individuals, fixes their salaries and supervises their work. *Id.* Probation officers have the powers of regular police officers and "shall perform any duties that are designated by the judge or judges of the court." *Id.* A board of county commissioners has no authority to create a county probation department, appoint probation officers, or create a county department that would control or supervise a county probation department. *Ohio Op. Atty Gen. 2002-004,* 2002 Ohio AG LEXIS 4(opinion addresses both common pleas and municipal courts).

The court of common pleas in a county having a county department of probation also is required, upon request, to supervise persons who are residents of the county who on probation to any other court exercising criminal jurisdiction in the state, and such other persons, upon request of the adult parole authority, who have been paroled, conditionally pardoned, or sentenced to a period of post release control . *O.R.C. § 2301.28.*

Municipal courts may also appoint probation officers who shall constitute the municipal department of probation. *O.R.C. § 1901.33.* Such probation officers "have all the powers of regular police officers and shall perform any duties that are designated by the judge or judges of the court." *Id.*

Offenders are placed on probation (now referred to as community control sanctions) only by order of the court. *O.R.C. § 2951.02.* Community service may be ordered by the court as a condition of probation. *Id.* [4] The court fixes the period of community service to be performed by the probationer. *Id.* Entities that may benefit from community service include municipal corporations. *Id.* Before a court may order community service to be performed in a municipal corporation, the municipal corporation must agree to accept community workers, and the workers must be supervised by an official employed or designated by the municipal corporation. *O.R.C. 2951.02(F)(1)(d), as stated in 1999 Ohio HB 349*.

A probation department has no existence separate and apart from the court it serves. It is an arm of the court. *O'Reilly v. Montgomery County,* No. 1:02-cv-1242 (S.D.In. February 24, 2003), 2003 U.S. Dist. LEXIS 4585 (interpreting similar Indiana statutes). A probation department is simply an administrative device by which the courts operate and perform their functions. *See, eg. Hall v. City of Columbus,* 2 F.Supp. 2d 995,996 (S.D. Ohio 1998); *Williams v. Dayton Police Dep't.,* 680 F.Supp. 1075, 1080 (S.D.Ohio 1987); *Roland v. State of Ohio,* No. C2-00-316, (S.D.Ohio June 11, 2002), 2002 U.S.Dist.LEXIS 13891. In Ohio, probation officers serve the court. *State ex rel. Gordon v. Zangerle*, 136 Ohio St. 371 (Ohio 1940). While their duties are not strictly judicial, they are considered necessary as an aid to the court's exercise of judicial functions and it is within the General Assembly's legislative power to authorize the appointment of such officers by the courts. *Id. at 381*.

---

[4] The portion of *O.R.C. § 2951.02* pertaining to community service as it existed in 2001 is attached as an exhibit.

### b.     The Probation Department and the Courts it Serves are not *Sui Juris*

The capacity to sue or be sued in a United States District Court is determined by the Law of the state in which the district court sits. F.R.C.P. 17(b), *Roland, supra.* The question of a court's capacity under Ohio law is well settled. The Ohio Supreme court has concluded on multiple occasions that Ohio courts are not *sui juris.* "Absent express statutory authority, a court can neither sue nor be sued in its own right." *State ex rel. Cleveland Municipal Court v. Cleveland City Council,* 34 Ohio St. 2d 120, 121 (1973); *Malone v. Court of Common Pleas of Cuyahoga County,* 45 Ohio St. 2d 245, 248 (1975). United States District Courts that have considered the issues have concluded the same. *Alkire v. Irving,* No. 5:96CV2687 (N.D. Ohio, September 25, 2003), 2003 U.S. Dist. LEXIS 17856; *Burton v. Hamilton County Juvenile Court,* No. 1:04CV368 (S.D. Ohio December 4, 2005), 2005 U.S. Dist. LEXIS 39775.

As an arm of the court, the department is not *sui juris.  See, Hall, Williams, Roland, supra.*

### c.     The Department and Walton are Entitled to Eleventh Amendment Immunity

The text of the Eleventh Amendment explicitly refers to the immunity of the states from suits "commenced or prosecuted . . . by Citizens of another State." U.S. Const., amend. XI. However, the Supreme Court has made clear that the sovereign immunity of the states "neither derives from nor is limited by the terms of the Eleventh Amendment," *Alden v. Maine,* 527 U.S. 706, 713 (1999), and that it extends to actions brought against a state by its own citizens, *Hans v. Louisiana,* 134 U.S. 1, 15, 33 L. Ed. 842, 10 S. Ct. 504 (1890). Sovereign immunity applies not only to the states themselves, but also to "state instrumentalities," *Regents of Univ. of Calif. v. Doe,* 519 U.S. 425, 429 (1997), or, in other words, to those government entities that act as "arms of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977).

An Ohio Common Pleas Court is not division of County Government, but an arm of the state for purposes of § 1983 liability and Eleventh Amendment immunity analyses. *Mumford v. Basinski,* 105 F.3d 264, 260 (6th Cir. 1997). An Ohio Municipal Court is accorded the same treatment. *Foster v. Walsh,* 864 F.2d 416 (6th Cir. 1988).

Officials sued in their official capacity stand in the shoes of the entity they represent. *S.J. v. Hamilton County,* 374 F.3d 416, 420 (6th Cir. 2004), *see also Kentucky v. Graham,* 473 U.S. 159, 165 (1985). n3. Local officials are acting as state agents when enforcing state law or policy. *Pusey v. City of Youngstown,* 11 F.3d 652, 658 (6th Cir. 1993). *Pusey* was a suit against a city prosecutor for acts occurring in her official capacity while acting in municipal court. The court noted:

> While we agree with the parties that Cronin is employed by the City of Youngstown, we nevertheless conclude that plaintiff's suit must fail as Cronin acted on behalf of the state when she was prosecuting state criminal charges and reduced the charge at the September 27, 1991 hearing. City prosecutors are responsible for prosecuting state criminal charges. See Ohio Rev. Code §§§§ 1901.34(C), 309.08. Clearly, state criminal laws and state victim impact laws represent the policy of the state. Because Cronin acts as a state agent when prosecuting state criminal charges, the suit against Cronin in her official capacity is to be treated as a suit against the state. Again, a suit against a state is not cognizable under 42 U.S.C. §§ 1983. Will, 491 U.S. at 71. n4

11 F.3d 652, 658 (6th Cir. 1993).

This "sovereign immunity doctrine is about money and dignity - it not only protects a State's treasury, but also 'pervasively . . . emphasizes the integrity retained by each State in our federal system.'" *S.J. v. Hamilton County,* 374 F.3d 416, 422 (6th Cir. 2004), quoting: *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 39 (1994). When immunity factors cut in different directions, "the Eleventh Amendment's twin reasons for being" govern an arm of the state inquiry. *Id.* "The preeminent purpose of state sovereign immunity is to accord States the dignity

that is consistent with their status as sovereign entities." *Fed. Maritime Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 760 (2002).

It is beyond cavil that the courts in enforcing the laws of the state of Ohio, administering its justice system, and seeing to the rehabilitation of its offenders are acting on behalf of the state. These functions are incidents of state sovereignty. As Stated in *S.J.*:

> To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78-79, 82 L. Ed. 1188, 58 S. Ct. 817 (1938) ("The constitution of the United States . . . recognizes and preserves the autonomy and independence of the states . . . in their judicial departments."). Such courts are the "adjudicative voice" of the state itself. *Harris,* 787 F.2d at 429. That is particularly true in the context of a [*422] court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court. *Ohio Const. art. IV, §§ 5; Foster,* 864 F.2d at 418. While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches [**15] of government from denying reasonable funding for the operation of the courts. *See, e.g., Ohio Rev. Code §§ 307.01(B); State ex rel. Weaver v. Lake County Bd. of Comm'rs*, 62 Ohio St. 3d 204, 580 N.E.2d 1090, 1092 (Ohio 1991); *Mumford,* 105 F.3d at 269; cf. *Tennessee v. Lane,* 158 L. Ed. 2d 820, 124 S. Ct. 1978, 1991 n.16 (2004) (observing that "the provision of judicial services" is "an area in which local governments are typically treated as arms of the state for Eleventh Amendment purposes.") (punctuation omitted).

374 F.3d at 421-22.

Recent panel decisions of the Sixth Circuit, including the decision in this case, have placed great weight in Eleventh Amendment analysis on who would pay in the event of a judgment. *See, Alkire v. Irving,* 330 F.3d 802 (2003). While these decisions have cast doubt on the continued validity of *Mumford v. Basinski,* and *Foster v. Walsh,* it should be noted that the Circuit still relies on these decisions in suits involving courts of common pleas. *See Triplett v. Connor,* 109 Fed. Appx. 94, 96 (6th Cir. 2004)("The district court also did not err in concluding that the state is entitled to Eleventh Amendment immunity to the extent that Triplett

-13-

sued Judge Connor in his official capacity"); *Meyers v. Franklin County Court of Common Pleas,* 81 Fed. Appx. 49 (6th Cir. 2003). In any event, the issue that the lack of an impact on the state treasury trumps all other concerns has been dealt with and discarded in an *en banc* ruling of the Sixth Circuit. *Ernst v. Rising,* 427 F.3d 351 (6th Cir. 2005). It is the state's potential legal liability that is at issue. *Id. at 364*. Ernst states further:

> "The sovereign immunity doctrine is about money and dignity--it not only protects a State's treasury, but also 'pervasively . . . emphasizes the integrity retained by each State in our federal system.' [Hess, 513 U.S.] at 39; see id. at 47 (noting [**34] that when immunity factors cut in different directions, 'the Eleventh Amendment's twin reasons for being remain our prime guide' in arm-of-the-state inquiry)." Id.; see also Seminole Tribe v. Florida, 517 U.S. 44, 58, 134 L. Ed. 2d 252, 116 S. Ct. 1114 (1996) (stating that sovereign immunity "does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties" (brackets, citations and quotations omitted)). Proving the point: [*365] When a State is sued by name in a lawsuit, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought or not, see Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984); see also S.J., 374 F.3d at 421; when a State or state official is sued in federal court in a lawsuit filed under state law, sovereign immunity bars the lawsuit regardless of whether monetary relief is sought, see Pennhurst, 465 U.S. at 102; and when state officials are sued solely for prospective injunctive relief, [**35] sovereign immunity does not apply even if the injunctive relief may affect the state treasury, see Edelman, 415 U.S. at 667. Important as the monetary liability factor may be, it is not the only factor.

427 F.3d 351, 365.

Both the common pleas and municipal courts are entities within Ohio's statewide court system all parts of which are governed by and ultimately respond to its supreme court. The Hamilton County Probation Department is a part of that court system and its appointed officers serve the needs of the courts that they serve. Michael L. Walton is sued only in his official capacity. He is an officer of both the common pleas and municipal courts – both as their court administrator, and as the chief probation officer.

Plaintiffs did not name Hamilton County as a party defendant in this matter. It has no liability to them as Walton is not a county officer and the probation department is not an agency controlled by the county government. Regardless, for the reasons stated above, the Probation Department is not *sui juris*, rendering a discussion of what entity might be responsible for paying a judgment against it irrelevant.

### D.	Plaintiffs Suffered No Loss as a Result of a County Policy or Custom

To prevail, Garcia and Wahoff must show that the County, though a custom or policy, caused the alleged constitutional violation. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The custom or policy must be the "moving force" behind the violation. *Id. at 694.* "To satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993), quoting *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987).

In this matter, Garcia and Wahoff have repeatedly and forcefully claimed that the "City" destroyed their property. (Memorandums in Opposition to Motions for Summary Judgment, doc.s 26 and 27). The non-city actors plaintiffs have identified work for the courts and not the county and none, save perhaps Walton, is a policymaker for purposes of imposing liability under § 1983. Even assuming that Walton is a "policymaker" for purposes of § 1983 analysis, plaintiffs have not linked any act performed by him to the damage claimed to have been suffered by plaintiffs. Indeed, the one policy that he appears to have been involved in is the cessation of the clean-up activities in the underpass areas along the highways where homeless persons might reside.

In any event, the description of the one eyewitness to the alleged removal of plaintiffs property claims that it was done by unknown persons wearing orange jump suits. The community service workers are not outfitted in such a uniform, and while the may wear safety vests, these are red or blue. Ignoring this important observation, it is undisputed that the community service crews were composed of probationers, under the direction of a crew supervisors who were not policymakers for the Courts, their Probation Department, or Hamilton County.

### III.    CONCLUSION

For the foregoing reasons, summary judgment for the Hamilton County Probation Department, and Michael L. Walton is appropriate.

    Respectfully submitted,

    JOSEPH T. DETERS
    PROSECUTING ATTORNEY
    HAMILTON COUNTY, OHIO

    *by:   /s/ David T. Stevenson*
    David T. Stevenson, Ohio Reg. 0030014
    Assistant Prosecuting Attorney
    Suite 4000 Wm. Howard Taft Law Center
    230 East Ninth Street
    Cincinnati, Ohio 45202
    *Trial Counsel for Hamilton County*
    *Department of Adult Probation and Michael*
    *Walton, Chief Probation Officer*

-17-

## CERTIFICATE OF SERVICE

       I hereby certify that the foregoing document was filed on the 21th day of July through the electronic filing system of the United States District Court for the Southern District of Ohio, which will cause service to be made upon:

| | |
|---|---|
| Stephen J. Felson, 0038432 | Richard Ganulin |
| Robert B. Newman, 0023484 | Assistant Solicitor |
| Suite 1401 | City Hall Room 214 |
| 617 Vine Street | 810 Plum Street |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |
| *Counsel For Plaintiffs* | |

                           */s/ David T. Stevenson*