IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GERALD CASH, *et al.*, | : | Case No. 1:01cv753 |
| Plaintiffs, | : | (Judge Beckwith) |
| v. | : | MEMORANDUM IN OPPOSITION TO COUNTY MOTION FOR |
| HAMILTON COUNTY DEPT. OF ADULT PROBATION, *et al.* | : | SUMMARY JUDGMENT (Doc. 73) |
| | : | |
| Defendants. | | |

## INTRODUCTION

In its fourth dispositive motion in this case (documents 25, 64, 66, 73) the County makes three claims:

    A.  "The probation department and the courts it serves are not *sui juris*."  (Doc. 73, County Memo. at 11)

    B.  The County Defendants are entitled to Eleventh Amendment immunity, not because the State of Ohio would pay any judgment against the County in this case but because the County Defendants are "arms" of the State of Ohio.  (*Id*. at 11-15)

    C.  The County was not a "moving force" behind the destruction of Plaintiffs' property and therefore did not cause Plaintiffs any loss.  (*Id*. at 15-16)

Plaintiffs will meet these arguments in the same order.

## ARGUMENT

A. THE HAMILTON COUNTY DEPARTMENT OF ADULT PROBATION AND ITS CHIEF PROBATION OFFICER ARE SUABLE ENTITIES.

The County argues that "Ohio courts are not *sui juris*" and, since probation departments are "arms" of those courts, no one can sue probation departments or their chief officers.  (Doc. 73, County Memo. at 11)  It cites no authority prohibiting such

suits. In fact, suits against probation departments are commonplace in this Circuit, as elsewhere. *E.g., Seagroves v. Tennessee Bd. of Probation & Parole*, 86 Fed. Appx. 45 (6th Cir. 2003), 2003 WL 22976652; *Schilling v. Franklin County Adult Probation*, 181 F.3d 103 (Table), 1999 WL 282659 (6th Cir.); *Mahar v. City of Livonia*, 64 F.3d 663 (Table), 1995 WL 478526 (6th Cir.); *Gifford v. State of Ohio & Summit County Adult Probation Dept.*, 35 F.3d 565 (Table), 1994 WL 443246 (6th Cir.); *Murray v. Roane County Criminal Justice System & Probation Dept.*, 2 F.3d 1151 (Table), 1993 WL 309709 (6th Cir.) Indeed, a search by Plaintiffs' counsel of United States Supreme Court decisions uncovered 159 lawsuits against probation departments without a single occasion on which such a department argued that it was not suable. Even those cases reaching full decision in the Supreme Court failed to contain any hint of such a possibility. *E.g., Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357 118 S.Ct. 2014 (1998).

The reason probation departments and their officials do not make this argument is found in the language of 42 U.S.C.§ 1983 and the central Supreme Court case interpreting it. The statutory language permits a lawsuit against "*every person* who, under color of [state law] . . . , subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." (Emphasis added.) In *Monell v. Department Of Social Services,* 436 U.S.658 (1978), the Supreme Court held that the word "person" included government officials acting in their official capacity, in that case a department of social services, a board of education and the

officials of those two entities.  Nowhere in their memorandum do the County Defendants argue that *Monell* has been limited in some manner since 1978.

Neither do the County Defendants argue that a Hamilton County court is the entity responsible for the destruction of Plaintiffs' property without notice and a hearing, as opposed to the Probation Department and its chief officer.  In fact, the County concedes that it is the officer, here Defendant Walton, who makes policy concerning homeless sweeps:

> In November 2001, Walton issued a directive that clean-ups in underpass areas were to cease until further notice. *Id. at Exhibit 4*.  The substance of the directive was relayed to the crew supervisors and they were told "not to touch" homeless sites. *(Shannon Depo. at 11-13)*.  Crew chiefs were also advised to contact the local police agency if they found money, guns, or other items of note, and to call and request instruction if they were not sure what to do. *Id. at 26-29*.

(Doc. 73, County Memo. at 5)  If Mr. Walton had needed permission from a judge or court administrator to issue this directive the County surely would have mentioned that crucial fact.  Its failure to do so totally undercuts its *sui juris* argument.

Finally, the County has litigated for nearly five years in the name of the Probation Department and the Chief Probation Officer without requesting a substitution of parties, even though it apparently believes the court system would be able to assert an Eleventh Amendment defense if substituted.  Since Eleventh Amendment immunity is an affirmative defense rather than a matter of subject-matter jurisdiction, *see Ernst v. Roberts*, 379 F.3d 373, 378 (6th Cir 2004), it may be waived.  *See, e.g., Ku v. State of Tennessee*, 322 F.3d 431 (6th Cir 2003):

> We hold that appearing without objection and defending on the merits in a case over which the district court otherwise has original jurisdiction is a form of voluntary invocation of the federal court's jurisdiction that is sufficient to waive a State's defense of the Eleventh Amendment immunity.

*Id*. at 435.  That is precisely what happened here – in fact, if there were ever a case for waiver of an affirmative defense, this is the one.

For all the foregoing reasons this Court should reject the County's invitation to dismiss it from this action on the ground that the entities named in the complaint may not be sued.  The Sixth Circuit has called for a trial and that is what must occur.

B.  THE COUNTY HAS PRESENTED NO FACTS SUFFICIENT TO PERMIT THIS COURT TO HOLD AS A MATTER OF LAW THAT IT IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY.

The Court of Appeals dealt with the County's Eleventh Amendment claim as follows:

> The bald assertion that the Department is an arm of the common pleas and municipal courts is insufficient by itself to garner Eleventh Amendment immunity.  *See Alkire v. Irving,* 330 F.3d 802, 811 (6th Cir.2003) (rejecting a per se rule granting Eleventh Amendment immunity to county courts).  Rather, this argument is one of many factors that must be considered by the district court.  *We have recognized that the most important factor is "will a State pay if the defendant loses?" Brotherton v. Cleveland,* 173 F.3d 552, 560 (6th Cir.1999).  In *Brotherton,* this court considered whether a county coroner enjoyed Eleventh Amendment immunity.  We concluded that "because Hamilton County - rather than the State of Ohio - would satisfy any money judgment against its county coroner, the case does not implicate the Eleventh Amendment."  *Id.* at 563; *see also S.J. v. Hamilton County,* 374 F.3d 416, 420-21 (6th Cir.2004) (rejecting sovereign immunity for a juvenile training facility and noting that the "emphasis on 'who pays' is substantial"); *Alkire,* 330 F.3d at 811 ("[W]e now recognize that the question of who pays a damage judgment against an entity as the most important factor in arm-of-the-state analysis, though it is unclear whether it is the only factor or merely the principal one.").
> The County raised the issue of Eleventh Amendment immunity in its motion for summary judgment.  Although the district court granted the County's motion, the order provides no findings or analysis pertaining to the Eleventh Amendment.  A final resolution of this issue will turn on factual

>findings regarding whether the Department of Adult Probation is part of the Ohio court system and *whether the State or the County would pay damages for a constitutional violation perpetrated by the Department*. We therefore remand this issue to the district court for further development.

388 F.3d at 545 (emphasis added).

Recognizing that the *Cash* panel, writing in 2004, held that "who pays" is "the most important factor," the County relies upon a later case, *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005), implying by the word "discarded" that *Cash* has been overruled. (Doc. 73, County Memo. at 14)  However, the *en banc* panel in *Ernst* makes its position quite clear:  "There can be little doubt that the state-treasury inquiry will generally be the most important one."  427 F.3d at 364.  And *Ernst* was a suit against the treasurer of the State of Michigan, officials of the Michigan Office of Retirement Systems, and members of the Michigan Judges Retirement Board, materially implicating both the State's dignity and its treasury.

The County concedes that the treasury of the State of Ohio will not be affected by a judgment for Plaintiffs in this case – it presents no evidence on this point, taking the position that "a discussion of what entity might be responsible for paying a judgment against it [is] irrelevant."  (Doc. 73, County Memo at 15)  It also makes no mention of how the dignity of the State of Ohio will be damaged if one of its 88 counties is required to pay damages for destroying property without a hearing, based upon the custom and practice of a county probation officer who is the chief county policymaker regarding homeless sweeps.  It fails to discuss any of the other factors which the Sixth Circuit has identified as relevant in an Eleventh Amendment inquiry:  "Whether the entity performs a governmental or proprietary function; whether the entity has been separately incorporated; the degree of autonomy that the entity exercises over its own operations;

5

whether the entity can sue or be sued and enter into contracts; immunity from state taxation; and whether the sovereign has immunized itself from responsibility for the entity's operations." *Ernst*, *supra*, 379 F.3d at 382. If it had done so it would have had to deal with another insurmountable problem facing its Eleventh Amendment argument – both of the contracts committing the Adult Probation Department to clean up for ODOT under the bridges and on the highways, and for the City on City-owned lots, were executed by the Hamilton County Board of County Commissioners "for the Hamilton County Adult Probation Department." (Doc. 24, City Motion for Summary Judgment, Exhs. A & B) The State of Ohio and the Hamilton County court system are not mentioned in these documents, since they obviously play no part in homeless sweeps.

Having failed to fulfill the most important factor for Eleventh Amendment immunity, having failed to discuss any of the lesser factors other than the bare assertion that the county defendants are "arms of the State," and having failed to tie the Hamilton County Municipal and County Court systems into the only issue before this Court – homeless sweeps – the County has simply not made a case for summary judgment regarding the Eleventh Amendment. Its motion should be denied.

C. DEPOSITION TESTIMONY PLAINLY INDICATES SUFFICIENT COUNTY INVOLVEMENT IN THE DESTRUCTION OF PLAINTIFF'S PROPERTY.

The County's argument on this point is very brief and not at all clear. It first states that anyone who might have destroyed Plaintiffs' property "worked for the Courts and not the county" (Doc. 73, County Memo. at 15), apparently a rehash of the arguments in Parts A and B of its Memorandum. It then goes on to state that "plaintiffs have not linked any act preformed by him (Walton) to the damage claimed to have been suffered by plaintiffs." This argument is deficient for several reasons.

6

First, Rule 56 does not permit summary judgment on the basis of such a conclusory statement – rather, it requires record evidence to back up the moving party's position. *Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 340 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 447 U.S. 317, 328 (1986): "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case"); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 921 (5th Cir. 1992) (same). Having failed to comply with the rule, the County cannot prevail on this portion of its motion.

Even if it had tried to present the Court with record evidence that it had nothing to do with the destruction of Plaintiffs' property, the County could not prevail. Since no one claims that the adult probationers themselves are the policymakers, this issue comes down to a factual one – who supervised them during homeless sweeps? While there is varying evidence on this point, the County's position is undercut by the testimony of Timothy Shannon, a "Unit Supervisor" for the Probation Department, whose job was to supervise crew chiefs who took probationers out on these sweeps.

```
                              30
14  BY MR. GANULIN [Attorney for the City]:
15     Q.  I'm Rick Ganulin, and I'm with the City of
16  Cincinnati.  Jeff Smith, I think you said, was a crew
17  chief?
18     A.  Uh-huh.
19     Q.  And your crew chiefs manage their own
20  probationers?
```

21    A.  Manage might be a little broad, but they

22  supervise them.

23    Q.  They still supervise them at the different

24  sites that were being cleaned up.  I think you called

25  it litter abatement?

31

1    A.  Uh-huh.  Yes.

2    Q.  Yes?

3    A.  Yes.

4    Q.  And is -- are the allegations in this

5  lawsuit the only instance that you're aware of where

6  Mr. Smith says he did not supervise his own

7  probationers but he let a Cincinnati police officer

8  direct them?

9    A.  Could you ask that question again?

10    Q.  As I understood what you just said

11  before --

12    A.  Yes.

13    Q.  -- Mr. Smith supervised his own

14  probationers during the litter abatement cleanup?

15    A.  Right.

16    Q.  But I thought I also heard you say that

17  insofar as the allegations in this lawsuit are

18  concerned, that Mr. Smith told you that a Cincinnati

19  police officer directed the probationers. Is that

20  what you testified before?

21     A.  No. *It was my testimony that the police*

22  *officer directed the crew to the site to abate. Now,*

23  *I have no knowledge of the -- of a police officer*

24  *having assumed supervision of the crew.*

25     Q.  *The normal practice would be for Mr. Smith*

32

1  *to supervise his own crew --*

2     A.  *Right.*

3     Q.  *-- during the abatement activities?*

4     A.  *That's correct.*

(Shannon Depo. at 30-32)

      It is apparent from this testimony that the City is trying to blame the County for destroying Plaintiffs' property, the County is trying to blame the City, and there is sworn testimony going both ways on the issue of who was in charge and therefore who was the principal "moving force" behind the prohibited conduct. Plaintiffs were not present at any of the sweeps and have no way of knowing for certain who is telling the truth. Since it appears uncontested, however, that both City and County personnel were present at the sweeps, and since no one in authority has as yet testified that Plaintiffs' personal property was segregated and taken to the police property room or anywhere else, the most likely conclusion is that both entities are responsible for the destruction on the site. One thing

is crystal clear, however – neither the County nor the City can demonstrate as a matter of law that the other was *solely* responsible. Only a jury can make that finding.

## CONCLUSION

For the foregoing reasons the County's motion for summary judgment should be denied.

Respectfully submitted,

/s/ *Stephen R. Felson*
Stephen R. Felson (0038432)
617 Vine Street, Suite 1401
Cincinnati, Ohio 45202
(513) 721-4900
(513) 639-7011 (fax)
SteveF8953@aol.com

Robert B. Newman (0023484)
Lisa T. Meeks (0062074)
NEWMAN & MEEKS CO., LPA
617 Vine Street, Suite 1401
Cincinnati, Ohio 45202
(513) 639-7000
(513) 639-7011 (fax)
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2006 a true and accurate copy of the foregoing City of Cincinnati's a Memorandum in Opposition was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties by certified mail who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Stephen R. Felson*